UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DONNA ANDERSON,

                Plaintiff,                        **MEMORANDUM OF
                                                  DECISION AND ORDER**
                                                    04CV0650 (ADS) (WDW)

        -against-


NASSAU COUNTY DEPARTMENT OF
CORRECTIONS; LIEUTENANT PETER
DUDEK, in his individual and official capacity;
UNDERSHERIFF JOHN MAGUIRE, in his individual
and official capacity; and SHERIFF EDWARD REILLY



                          Defendants.
-------------------------------------------------------------X
**APPEARANCES**

**JOHN J. LEO, ESQ.**
Attorney for the Plaintiff
191 New York Avenue
Huntington, NY 11743

**LORNA B. GOODMAN**
County Attorney of Nassau County
Attorneys for the Defendants
One West Street
Mineola, NY 11501
              By:      Dennis J. Saffran, County Appeals Bureau Chief
                        Ilene L. Teitler, Deputy County Attorney, of counsel

**SPATT, District Judge:**

This case arises from the plaintiff's allegations that she was passed over for a promotion to the rank of lieutenant in the Nassau County Sheriff's Department in violation of 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, and the New York Executive Law § 290, *et seq.*

## I.    BACKGROUND

The following facts are taken from the complaint, the parties' Rule 56.1 statement and counter-statement, the plaintiff's affidavit, and the parties' submissions on the motion. The plaintiff, Donna Anderson was hired by the Nassau County Sheriff's Department ("the Department") as a Correction Officer in July of 1985. Until 1999, the plaintiff's career with the Department was marked by a steady progression of promotions, achieving the designation of First Class in 1990**;** Corporal in 1998**;** and Sergeant in 1999. From 1995 to 1999, Anderson was assigned to the Attendance Control Unit/Medical Investigations ("the Unit"). Until she achieved the rank of Sergeant in 1999, the plaintiff was under the direct supervision of Sergeant Peter Dudek. In October of 1999, the plaintiff was designated an "Investigator Sergeant" within the Department.

On June 3, 2000, Anderson took the civil service exam for promotion to the rank of lieutenant and attained the top score of 85, along with ten male candidates. These eleven made up the "first band" of test takers. The "second band" included

eighteen male and two female candidates. From the test results, a list of eligible candidates was created. On October 24, 2000, nine appointments were made from the first and second bands to fill nine lieutenant vacancies; all of those appointed were male. Among those receiving a promotion was Sergeant Dudek and as a result, he was transferred to another unit, leaving the plaintiff as the senior officer of the Unit with the title of Supervisor of Human Resources/Personnel.

From June 2000 until September 2002, the Unit was under the direct command of Undersheriff John Maguire. In March of 2001, Dudek returned to the Unit as Executive Officer and Supervisor (falling between the plaintiff and Maguire in the chain of command). In September of 2002, Deputy Undersheriff Anthony Zuaro replaced Maguire as commanding officer of the Unit. Throughout the entire period in question, the Unit was under the ultimate command of Sheriff Edward Reilly.

During the time that Dudek had supervisory authority over the Unit, the plaintiff alleges that an atmosphere of both sexual harassment and gender discrimination permeated the work environment. Specifically, the plaintiff alleges that Dudek would target women by requesting independent examinations and hearings for female officers who sought medical leave because of work related injuries. Furthermore, in May of 2001, Dudek instructed Anderson not to sign her own time sheet according to usual protocol, but instead to send it to Maguire's office for approval. The plaintiff claims that Dudek did not explain why she was required to do

so.  In September of 2001, Dudek informed the plaintiff that she was required to stamp her overtime time sheet at both the start and end of each overtime shift.  The plaintiff claims that no male officers were required to follow these procedures.  Anderson states that she complained to Dudek regarding this treatment and even posted an article about sexual harassment in the workplace on the Unit's bulletin board.

In addition, as a sergeant, the plaintiff was given access to the use of county vehicles.  However, in August of 2000, Maguire informed the plaintiff that she would no longer be permitted to use the county vehicle assigned to her, but did not explain why.  After having her vehicle privileges restored, they were restricted again in August of 2001, when Dudek informed the plaintiff that she could not take the vehicle outside of Nassau County and had to leave it on DOC grounds during her scheduled vacations.  The plaintiff alleges that no male officers in the same position faced similar restrictions.

The plaintiff also states that she was subjected to a sexually explicit harassment.  Shortly after the Spring of 1999, the plaintiff discovered pornographic web-sites on a computer assigned to the Unit and located in Dudek's office.  In addition, the plaintiff complained about the presence of a calendar depicting women in revealing clothing in the Unit trailer.  Further, the plaintiff alleges that she was subjected to sexual harassment at the hands of Undersheriff Maguire.  Specifically, the plaintiff provides the following account:

<u>September 2001:</u>

Maguire with Dudek present stepped into his private bathroom and stated: Sergeant Anderson, do you want to step into my office?

<u>October 2001:</u>

Maguire stated he loved Halloween because he gives his wife money to go out with her friends so he can answer the door when young girl's [sic] come to his door and state: "would you come in and I will give you a treat?"

<u>November 2001:</u>

In stopping near Maguire who was with Sheriff Reilly, Maguire asked Plaintiff "would you like some candy little girl?" Sheriff Reilly asked Plaintiff if Maguire spoke to [her] like this all the time and [she] said yes.

<u>November/December 2001:</u>

When [the plaintiff] entered Maguire's office to get paperwork signed, Maguire while talking on the telephone motioned Plaintiff in and said in a loud voice: "and make sure you wear the crotch-less underwear to lunch." Maguire laughed and said "it's OK, only Sergeant Anderson is in my office."

<u>2002:</u>

[While Anderson] was in Maguire's office, he informed [her] that one of his jobs while working at Riker's Island was in finding areas to put his married bosses' girlfriends. Maguire also told Plaintiff that one of his bosses wanted a girlfriend moved to another building but Maguire reminded him that another girlfriend was in that building. His . . . boss thanked him for looking out for him.

Maguire also stated that if you walked into a boss's office and he put his feet on the desk he was looking for a 'blow job.' [Anderson] expressed her disgust.

Maguire would say in [Anderson's] presence "I fucked the City and now I am raping Nassau County."

While [Anderson] was entering Maguire's office and Dudek leaving, Maguire exited his bathroom and touched his pants zipper and motioned like he was going to unzip it and said "Hey Pete" while laughing.

> In June 2002, while [the plaintiff] was in Maguire's office with
> Dudek, Maguire stated to someone on the telephone, "that noise is
> Lt. Dudek chasing Sergeant Anderson around the table." Lt.
> Dudek played along by rapping on the desk with his hands to make
> sounds like someone running.

> In a June 2002 meeting in Sheriff Reilly's office with Sheriff
> Reilly, Magure, Lt.[Zuarro], John O'Connor, Sergeant Michael
> Golio, Deputy Undersheriff Head, and Dudek, [Anderson] was
> subject to sexual toned comments by Head about putting his floppy
> and drive together and how he puts his floppy in the hard drive and
> the floppy becomes hard.

Declaration of Donna Anderson, 04CV0650, May 25, 2007, at ¶ 12. The plaintiff

states that she complained about these comments to Dudek, but no action was taken in

response to her complaints. Instead, the plaintiff alleges that her complaints led to

retaliation by her supervisors.

In her role as Supervisor of Human Resources, the plaintiff frequently went to

the Unit's "personnel trailer," which housed various personnel documents. While

there, the plaintiff found evidence of misfiling, uncashed checks, and other clerical

problems in the Unit. On September 11, 2003, the plaintiff wrote a five-page memo to

Undersheriff Zuaro detailing her findings concerning these clerical problems. Based

on this memo, the Sheriff's Bureau of Investigation ("SBI") initiated an internal

investigation of the alleged problems. The plaintiff argues that she was further

retaliated against by her supervisors for making this report.

The defendants state that on September 8, 2003, several days before the

plaintiff wrote the memo to Undersheriff Zuaro, the SBI initiated an investigation of

the plaintiff herself, based upon an anonymous phone call charging that she was receiving overtime payments to which she was not entitled. On September 30, 2003, the plaintiff was informed of the investigation, relieved of her supervising duties, and told to report to the training unit. The plaintiff argues that this was a downgrade in responsibilities. After learning of the investigation, the plaintiff allegedly deleted 450 documents from the Unit computers, including personnel files, inmate tracking records, inmate visitor records, police warrant database, and the motor vehicle department records of her colleagues, resulting in a second SBI investigation. The plaintiff denies that she inappropriately accessed the records and claims that she accessed ceratin personnel and other files only upon the direction of her supervisor.

On November 5, 2003 after the two investigations resulted in findings adverse to her, Anderson received a reprimand and a Notice of Personnel Action, which suspended her without pay for ten days and docked her fifteen vacation days. Subsequently, the plaintiff was permanently relieved of her duties as Supervisor and transferred to a police platoon as a "Security Sergeant." The plaintiff alleges that no other officers have ever been reprimanded for receiving overtime payments.

Later that month, the plaintiff requested disability leave at full pay, but her request was denied. The plaintiff alleges that she suffered emotional distress as a result of the SBI investigations, and that her physician recommended that she take time off in an effort to properly heal old injuries to her back and ankle. She further

alleges that she was subjected to different rules than other officers taking medical leave. For example, the plaintiff states that she was required to file successive injury reports, but approximately thirty other people who took medical leave were not required to file such reports.

In December of 2003, the plaintiff filed three grievances under her union's collective bargaining agreement disputing the findings against her and appealing the ensuing reprimand and transfer. Finally, on or about February 2, 2004, Anderson received notification that her medical leave had been reclassified as extended leave, retroactive to November 12, 2003. The plaintiff claims that this was an adverse action, taken without a hearing in contravention of New York State Municipal law § 207(c).

The defendants argue that the plaintiff did not receive a promotion to lieutenant because although she scored well on the exam, she was not otherwise qualified for the promotion. The defendants state that the civil service job qualifications for the rank of lieutenant require that a candidate have both competitive scores on the exam and at least two years of service as a sergeant at the time of appointment. At the time that the nine vacancies were filled on October 24, 2000, the plaintiff had only fifteen months experience as a sergeant and, therefore, was not qualified for the position. However, the plaintiff avers that on September 19, 2003, long after she attained the requisite two years experience, she again requested to be

promoted to lieutenant, but was never considered for the position.

Further, the defendants state that the employment actions taken with respect to the plaintiff were not discriminatory or retaliatory and the record clearly establishes that the plaintiff's duties were legitimately altered in response to the investigative findings of the SBI.

Presently before the Court is the defendants' motion for summary judgment. The defendants argue that the plaintiff's claims pursuant to the First Amendment and § 1983 are barred because the report she made regarding the disarray of the personnel trailer was required by her role as a supervising officer, and was not protected speech. In addition, the defendants contend that all of the plaintiff's claims pursuant to Title VII are time-barred and not revived by the continuing violation doctrine. Furthermore, the defendants contend that the plaintiff's Title VII claims are insufficient on their merits because any alleged harassment was not severe or pervasive and the plaintiff failed to avail herself of the Department's established anti-harassment grievance policy. Finally, the defendants argue that they are entitled to summary judgment on the plaintiff's New York State causes of action because the plaintiff failed to timely file a notice of claim against the county as required by GML § 50-i.

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is proper only where no genuine issue of material fact

exists to present to the jury.  Rule 56 of the Federal Rules of Civil Procedure states:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to
> a judgment as a matter of law.

FED. R. CIV. P. 56(c).

A motion for summary judgment should be granted only when "there is no

genuine issue as to any material fact and . . . the moving party is entitled to a judgment

as a matter of law."  FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317,

322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The moving party bears the

burden of establishing the absence of a genuine issue of material fact.  *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Once the moving party has offered evidence that no genuine issue of material fact

remains, the burden shifts to the non-moving party to provide evidence that a genuine,

triable issue remains.  *Id.* at 250.  It is well-settled that the non-moving party cannot

defeat summary judgment with nothing more than unsupported assertions or the

allegations in its pleadings.  FED. R. CIV. P. 56(e); *Cifarelli v. Vill. of Babylon*, 93 F.3d

47, 51 (2d Cir. 1996); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F. 3d 14,

18 (2d Cir. 1995).

In deciding a motion for summary judgment, the Court must view all of the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson*, 477 U.S. at 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202; *Vann v. City of N.Y.*, 72 F.3d 1040, 1048–49 (2d Cir. 1995). Notably, "the trial court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs. Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1994); *see Donahue v. Windsor Locks Board of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987) (holding that on a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried"). The Second Circuit has directed courts to be particularly cautious in granting summary judgment in employment discrimination cases where the intent of the employer is at issue because there is rarely direct evidence of discriminatory intent. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997); *Gallo*, 22 F.3d at 1224.

The complaint in this action contains Title VII and New York State Executive Law claims against the Nassau County Department of Corrections for harassment,

discrimination, and retaliation.  In addition, the plaintiff alleges that the Department of
Corrections violated her constitutionally protected First and Fourteenth Amendment
Rights in contravention of 42 U.S.C. § 1983.  The plaintiff's complaint also contains
§ 1983 and New York State Executive Law § 296(6) claims against the individual
defendants Dudek, Maguire, and Reilly.

Title VII of the Civil Rights Act of 1964 provides that:  "It shall be an
unlawful employment practice for an employer . . . to fail or refuse to hire or to
discharge any individual, or otherwise to discriminate against any individual with
respect to his compensation, terms, conditions, or privileges of employment, because
of such individual's . . . sex."  42 U.S.C. § 2000e-2(a).

Also, § 1983 permits an action against any "person who, under color of any
statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to
be subjected, any citizen of the United States . . . to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.
The Second Circuit has held that "§ 1983 and the Equal Protection Clause protect
public employees from various forms of discrimination, including hostile work
environment and disparate treatment, on the basis of gender."  *Demoret v. Zegarelli*,
451 F.3d 140, 149 (2d Cir. 2006).  Once such an action is established, the analysis is
similar to that used for employment discrimination claims brought under Title VII.
However, § 1983 claims, unlike Title VII claims may be brought against individuals.

*Id.*

Lastly, New York Executive Law § 296(1) provides that it is unlawful for any employer "because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status of any individual, . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment."  N.Y. Exec Law § 296(1)(a) (McKinney 2005).

**B.     Hostile Work Environment Claims**

**1.     As to the Merits of Plaintiff's Hostile Work Environment Claims**

To state a claim of sexual harassment based on a hostile work environment, the plaintiff must plead facts showing that the complained of conduct: "(1) is objectively severe or pervasive-that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex."  *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks and citations omitted).  In addition, the plaintiff must establish that a specific basis exists for imputing the complained of conduct to her employer.  *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003) (citing *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir.1999)).  Further, in order to survive summary judgment, the plaintiff must raise a triable issue of fact as to whether "a single incident was

extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir.2000) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.2000)).

"The sufficiency of a hostile work environment claim is subject to both subjective and objective measurement: the plaintiff must demonstrate that she personally considered the environment hostile, and that the environment rose to some objective level of hostility." *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179 (2d Cir. 2001) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). The factors considered in the Court's analysis include: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. In addition, psychological effects on the employee are relevant to determine whether the plaintiff actually found the environment abusive. *See Harris*, 510 U.S. at 23, 114 S. Ct. 367, 126 L. Ed. 2d 295.

Also, the plaintiff must show that there is some specific basis to impute the actions giving rise to the hostile work environment to her employer. *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000). Importantly, an employer may be presumed responsible where the alleged harasser is the plaintiff's supervisor and the harassment culminated in some tangible employment action. *See Faragher v. City of*

*Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).

Notably, the Second Circuit has directed that in determining whether the plaintiff suffered an atmosphere of hostility, courts must look to the totality of all the circumstances. In fact, the circumstances of this case hue closely to the Second Circuit case *Raniola v. Bratton*, 243 F.3d 610 (2d Cir. 2001). In *Raniola*, the plaintiff was a police officer for the New York City Police Department, who claimed to have been subjected to years of abuse including sex-based derogatory remarks, disproportionately burdensome work assignments, sabotage of her work, threats, and false accusations of misconduct. *Id*. at 613. Further, the plaintiff was denied the opportunity to work desirable shifts that were granted to male officers and was refused commendations that were given to male officers. *Id.* at 614. The plaintiff also alleged that she was suspended, placed on probation, and terminated in retaliation for having complained about her work conditions. *Id.* at 615.

The district court dismissed the action after presentation of the plaintiff's case at trial. The court held that there was insufficient evidence that the plaintiff suffered a hostile work environment, finding that her experience was typical of "'the camaraderie of a precinct house' which lacks '[s]ome of the niceties of expression that one would expect' in many other work places." *Id.* Further, the district court dismissed as unavailing anecdotal accounts of disparate treatment between men and women and complaints of more onerous work assignments because such proof was

insufficient for a jury to find discrimination.  *Id.*

The Second Circuit reversed the district court's determination and held that the plaintiff supplied sufficient evidence to bring her claims to the jury.  The court explained that "[w]hereas other disparate treatment claims may scrutinize discrete harms such as hiring or discharge, a hostile work environment claim analyses a workplace environment *as a whole* to discover whether it is 'abusive.'" *Id*. at 617 (emphasis added) (quoting *Harris*, 510 U.S. at 22, 114 S. Ct. 367, 126 L. Ed. 2d 295). The court made clear that in hostile environment cases, the harassing conduct need not be motivated by sexual desire or advances to establish discrimination on the basis of sex. *Id.*

First, the court noted all of the sexually explicit incidents that the plaintiff endured, including a statement made by a commanding officer to the plaintiff that his daughter-in-law "wears the pants in the family[;] my son-in-law [sic] doesn't smack her around."  Also, during a meeting the same officer stated that if the plaintiff  "opens her mouth, I am going to put one in her fucking head."  The plaintiff later found profane statements written across her name in the police ledger.  *Id.* at 618.

Next, the court held that the evidence of disparate treatment must also be considered in determining whether the work environment was hostile.  In this regard, Raniola alleged that her commanding officer denied her requests to work a 4 to 12 shift, whereas eight male officers had been permitted to work such a shift; she was

denied a request to work back to back shifts that male officers were permitted to work; she was given monthly quotas higher than those given to male officers; and she was assigned to an undesirable sector of the precinct. *Id.* at 619. Finally, the court considered evidence that the plaintiff was unfairly denied a commendation received by two male officers and various forms of workplace sabotage against the plaintiff such as the disappearance of her police memo book. *Id.* at 619–20.

Viewing the totality of the circumstances in a light most favorable to the plaintiff, the court found that the sex-based remarks, combined with the disproportionate work assignments, and the evidence of threats and sabotage were sufficient for a reasonable jury to find that the incidents were continuous and concerted, thereby altering the conditions of the plaintiff's work. *Id.* at 621. Furthermore, the court held that evidence that the plaintiff made administrative complaints following various incidents was sufficient for a reasonable jury to conclude that she perceived her treatment as abusive. *Id.*

Applying this standard, the Court finds that Anderson's hostile environment claims will survive. Although the sexually-tinged remarks directed at Anderson, standing alone, would likely not withstand a motion for summary judgment, when they are combined with her account of disparate treatment, failure to promote, and inappropriate discipline, the Court finds that there is a triable issue of fact as to whether her treatment was severe and pervasive. The plaintiff claims that she was the

target of ten sexually charged statements made by Maguire, in Dudek's presence, and by Undersheriff Head from 2001 to 2002.  In addition, the plaintiff has stated that she observed and was subjected to more burdensome requirements for medical leave and time accounting than her male counterparts; the use of her county vehicle was limited, whereas use was not limited for male officers; she was never considered for a promotion despite having attained the requisite two years of experience while the list created from the results of the June 2000 lieutenant's exam remained active; and she was disciplined for receiving overtime payments, a condition not encountered by male officers.

That the plaintiff's claims raise a triable issue for a jury is further bolstered by the fact that both the alleged harassment and discrimination occurred at the hands of Anderson's superiors, Maguire, Dudek, Reilly, and Head.  Similarly, in *Raniola*, most of the plaintiff's complaints arose from statements and administrative decisions made by her commanding officer.  *See id.* at 618–19.  Further, the Court finds that the fact that the plaintiff complained about her treatment to Dudek and Sheriff Reilly and posted an article regarding harassment on the Unit's message-board is sufficient to raise an inference that the plaintiff subjectively believed her environment to be hostile.

However, this does not end the inquiry.  The plaintiff must also show that "the conduct at issue was not merely tinged with offensive connotations, but actually constituted discrimination because of her gender.  *Oncale v. Sundowner Offshore*

*Services, Inc.*, 523 U.S. 75, 80-81, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998). A determination that the alleged harassment was based on the plaintiff's gender becomes difficult "when the discriminatorily hostile environment is a product of both sex-specific verbal abuse and other [non-sexual] adverse treatment." *Raniola*, at 621. The plaintiff may use circumstantial evidence to demonstrate that all of the alleged abuse, including that not explicitly sex-based was because of the plaintiff's gender. *Id.* at 621–22.

In this regard, the *Raniola* court found that "prior derogatory comments by a co-worker may permit an inference that further abusive treatment by the same person was motivated by the same sex-bias manifested in the earlier comments." *Id.* at 622. Here, as in *Raniola,* the commanding officers accused of participating in the explicit sex-based comments are the same persons responsible for the allegedly disparate administrative requirements endured by the plaintiff. For example, Maguire is identified as the main offender in making sex based comments to Anderson and was also responsible for limiting the plaintiff's use of her county vehicle. Dudek, who is alleged to have been present for and participated in some of Maguire's sexually explicit comments, made decisions regarding the plaintiff's medical leave, time accounting procedures, and work responsibilities. In addition, fact issues are raised as to whether Sheriff Reilly knew about and was tolerant of the sex-based comments complained of by the plaintiff. In view of all of the circumstances in this case, a

19

reasonable jury could infer that the alleged adverse treatment of Anderson was suffered on account of her gender.

### 2. As to Whether Plaintiff's Title VII Hostile Environment Claims are Time-Barred

Pursuant to Title VII and the ADEA, a charge of discrimination must be filed with the Equal Employment Opportunity Commission ("EEOC") within 180-days of any alleged unlawful employment practice or 300-days where there is a State or local agency with authority to grant or seek relief from such practice. 42 U.S.C. § 2000e-5(e)(1); *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 237–38 (2d Cir. 2007) (recognizing that 300-day filing requirement applies to the ADEA). Because New York has its own anti-discrimination laws and enforcement agency, the statute of limitations for filing a charge of discrimination with the EEOC is 300-days after the alleged occurrence of an unlawful employment practice. *Id.*; *Harris*, 186 F.3d at 247 n.2 (quoting *Morgan*, 536 U.S. at 118, 122 S. Ct. 2061, 153 L. Ed.2d 106). Failure to timely file a charge with the EEOC renders the subject claim time-barred, preventing a claimant from bringing her claim in federal court. *Elmenayer v. ABF Freight System, Inc.*, 318 F.3d 130 (2d Cir. 2003); *Starr v. Time Warner, Inc.*, No. 07CV5871, 2007 WL 4144627, at *3 (S.D.N.Y. Nov. 21, 2007).

Here, the plaintiff filed a complaint with the New York State Human Rights Division ("the Human Rights Division") on February 23, 2004. Pursuant to a work-sharing arrangement between the EEOC and the Human Rights Division, charges

received by the Human Right Division are automatically deemed dual-filed with the EEOC. *See Sterling v. Contec Corp. LLC,* 333 F. Supp. 2d 37, 38 (N.D.N.Y. 2004). Unless some action contributing to the plaintiff's hostile work environment claim falls within 300 days of her charge, the plaintiff's Title VII hostile environment claim is untimely.

The Plaintiff contends that the continuing violation doctrine applies to her Title VII claims and that her claims are timely because she was subjected to years of sexually explicit harassing comments; was denied a promotion on the basis of her gender; and was subjected to standards that differed from those applied to her male counterparts and a reduction in title and responsibilities following her complaints of harassment and discrimination.

The continuing violation exception "extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations." *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d. Cir. 1998) (internal citations and quotations omitted). With respect to the continuing violation doctrine, the Supreme Court has differentiated between claims of discrete discriminatory acts and claims of hostile work environment. "Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" and "each discrete discriminatory act starts a new clock for filing

charges alleging that act." *Morgan*, 536 U.S. at 113, 122 S. Ct. 2061, 153 L. Ed. 2d

106. It is well-settled that certain adverse employment practices such as the failure to

promote, failure to compensate adequately, undesirable work transfers, and denial of

preferred job assignments are discrete acts and cannot be considered as part of an

ongoing pattern or policy of discrimination. *Mix v. Delaware and Hudson Ry. Co.*,

345 F.3d 82, 89 (2d Cir. 2003). In such cases, "each incident of discrimination and

each retaliatory adverse employment decision constitutes a separate actionable

unlawful employment practice." *Morgan*, 536 U.S. at 114, 122 S. Ct. 2061, 153 L.

Ed. 2d 106.

However, noting that hostile environment claims are different from claims

based solely upon discrete acts, the *Morgan* Court found that "in order for the charge

to be timely, the employee need only file a charge within 180 or 300 days of any act

that is part of the hostile work environment." *Id.* at 118, 122 S. Ct. 2061, 153 L. Ed.2d

106. "The Court's rationale for regarding a hostile work environment claim as, in

effect, a continuing violation was that such a claim is comprised of a series of separate

acts that collectively constitute one unlawful employment practice." *Elmenayer*, 318

F.3d at 134 (internal citations omitted). The incidents "must not be isolated and

sporadic outbreaks of discrimination, but a dogged pattern." *Sunshine v. Long Island

Univ.*, 862 F. Supp. 26, 29 (E.D.N.Y. 1994) (internal citations omitted). However, the

Second Circuit has found that the existence of a hostile environment claim does not

22

revive an otherwise time-barred discrete act of discrimination. *Petrosino v. Bell Atlantic*, 385 F.3d 210, 220 (2d Cir. 2004); *accord Sundaram v. Brookhaven Nat. Labs.*, 424 F. Supp. 2d 545, 561 (E.D.N.Y. 2006).

Here, the plaintiff claims that the defendants' actions created a hostile work environment. In this regard, her claims will not be time barred if all acts constituting the claim are part of the same unlawful practice and at least one act falls within the filing period. According to the Second Circuit, "a hostile work environment claim is timely if an EEOC charge is filed within 300 days of any act that is part of the hostile work environment." *Elmenayer*, 318 F.3d at 134 (internal citations omitted).

Anderson's allegations include events spanning a period from 1999 to the disciplinary action taken against her regarding shift differential pay in 2003. Further, throughout the relevant period, command of the Unit remained under the supervision of the individuals responsible for the alleged harassment. Reading the complaint in the light most favorable to the plaintiff, the Court finds that the plaintiff has sufficiently alleged a pattern of discrimination that continued over a period of years with some incidents occurring within the appropriate filing period. This reasoning applies with equal force to the plaintiff's hostile environment claims pursuant to § 1983 and New York State Executive Law § 290, *et seq.* As such, the Defendants' motion to dismiss the plaintiff's hostile work environment claim as time-barred is denied.

### C.     As to the Plaintiff's Failure to Promote Claims

The plaintiff claims that she took the Department's lieutenant examination in 2000 and ranked in the first band with ten other individuals, all of whom were male. The plaintiff further claims that the Sheriff promoted only nine men, some of whom were in the second band, which consisted of eighteen men and two women.  Finally, the plaintiff alleges that because the list of eligible candidates created from the 2000 exam results remains active today and she has never been reconsidered for promotion to lieutenant, she has been discriminatorily denied a promotion.

In order to establish a prima facie case of discriminatory failure to promote, the plaintiff must establish that: (1) she is a member of a protected class; (2) she was qualified for the job for which she applied; (3) she was denied the job; and (4) the denial occurred under circumstances giving rise to an inference of discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Howley*, 217 F.3d at 150.  The Second Circuit has described the burden that an employee must meet in order to defeat summary judgment as "de minimis." *Howley*, 217 F.3d at 150 (citing *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

Once the plaintiff has established a prima facie case the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment action.  *McDonnell Douglas*, 411 U.S. at 802–03, 93 S. Ct 1817, 36 L.

Ed. 2d 668.  Then, the plaintiff must then show that the employer's reason is illegitimate or is mere pretext for an impermissible discriminatory motive.  *Id.* at 804–05; *McPherson v. New York City Dept. of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006).  "[T]he plaintiff is not entitled to judgment unless she shows that the challenged employment decision was more likely than not motivated, by unlawful . . . discrimination."  *Howley*, 217 F.3d at 150.

### 1.    Statutes of Limitations

As discussed above, discrete acts of discrimination are acts that occur at identifiable points in time and each discrete act of discrimination begins the period running for the plaintiff to file a claim for relief as to that act.  *See Sackey v. City of New York*, No. 04CV2775, 2006 WL 337355, at *4 (S.D.N.Y. Feb. 15, 2006).  "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify."  *Morgan*, 536 U.S. at 113, 182 S. Ct. 2061, 153 L. Ed. 2d 106; *see also Mix*, 345 F.3d at 89.  Thus, a failure to promote cannot be considered as part of a continuing violation and will be time-barred if it occurred prior to the applicable limitations period.  *See Sackey*, 2006 WL 337355, at *4.

The plaintiff filed a charge of discrimination with the New York State Human Rights Division on February 23, 2004.  Because the plaintiff may not assert Title VII claims based on discrete acts taking place more than 300-days prior to her the filing of her charge, the Court must dismiss as time-barred any Title VII claims for failure to

25

promote based on violations occurring before April 29, 2003.  *See Sackey*, 2006 WL
337355, at *4.

Further, as the statute of limitations for § 1983 claims is three years, any
failure to promote activities before February 17, 2001 are time-barred.  *See Patterson
v. County of Onieda*, 375 F.3d 206, 225 (2d Cir. 2004).  Similarly, the limitations
period for New York State claims is also three years, but is tolled during the pendency
of the claim with the State Division on Human Rights.  *Sackey*, 2006 WL 337355, at
*4.  As the plaintiff filed her claims with the Human Rights Division on February 23,
2004 and was issued a right to sue letter on April 30, 2004, all events taking place
before May 28, 2001 are time barred for purposes of the plaintiff's New York State
failure to promote claims.  However, earlier activities may be considered for the
purposes of plaintiff's hostile environment claims.  *See Pearson v. Board of Educ.*,
499 F. Supp. 2d 575, 590–91 (S.D.N.Y. 2007); *Grosso v. City University of New York*,
03CV2619, 2005 WL 627644, at *1–2 (S.D.N.Y. March 16, 2005); *Hawana v. City of
New York*, 230 F. Supp. 2d 518, 525–26 (S.D.N.Y. 2002).  Further, "evidence of
earlier promotion denials may constitute relevant 'background evidence in support of
a timely claim.'"  *Petrosino v. Bell Atlantic*, 385 F.3d 210, 220 (2d Cir. 2004) (quoting
*Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed 2d 106).  Finally, because the
plaintiff asked to be considered for a promotion, at least once during the limitations
period—her last request made to Sheriff Reilly was on September 19, 2003—her

failure to promote claims are not barred in their entirety.

## 2. Merits of the Plaintiff's Failure to Promote Claim

Anderson took the lieutenant's qualifying examination on June 3, 2000 and was tied with ten male officers for first place. The plaintiff argues that the circumstances under which she was denied a promotion give rise to an inference of discrimination because nine men, and no women were promoted when available vacancies were filled.

 The defendants offer non-discriminatory reasons for declining to promote Anderson. First, with regard to the first round of promotions in October of 2000, Anderson was not yet qualified for the rank of lieutenant because she did not possess the requisite two years of experience as sergeant. However, as of July 30, 2001, the plaintiff achieved the necessary experience and could have been reconsidered for a promotion. (*See* Ex. F in Support of Defendants' Motion for Summary Judgment, April 23. 2007 ). Indeed, the plaintiff states that on September 19, 2003, she met with Sheriff Reilly and requested to be reconsidered for lieutenant.

Second, in their moving papers the defendants' argue that no promotions, male or female, have been made during the applicable period. In support of this assertion, the defendants rely on the list created from the results of the June 2000 lieutenant's examination, which notes the dates of promotions made from the group of eligible candidates. (*See* Ex. D in Support of Defendants' Motion for Summary Judgment,

April 23. 2007 ).  Although most promotions are noted in October of 2000, before the plaintiff would have been eligible for the rank of lieutenant, Anthony Zuaro was promoted on October 5, 2001, after the plaintiff had attained the requisite level of experience.  (*Id.* )  Further, a notation of "app. rejected" is made after the name of a male officer achieving a lower score than plaintiff on the exam.  It is not clear whether this notation indicates that an additional person was offered and declined a promotion to lieutenant.  In addition, as no date is indicated after the notation, it is not clear whether any such offer was made after the plaintiff attained two years as sergeant.  On this basis, the Court finds that triable questions of fact exist as to exactly how many promotions were made after the plaintiff became eligible for the rank of lieutenant, the reasons for the failure to promote Anderson, and the intent of the defendants in selecting the persons who were promoted.

### D.      As to Plaintiff's Claims for Retaliation

The plaintiff claims that she was unlawfully disciplined, transferred, denied a promotion, and subjected to disproportionately arduous standards in attempting to obtain medical disability for complaining to her supervisors regarding the alleged harassment and discrimination that she encountered and for voicing matters of public concern.  In addition to prohibiting discrimination against protected classes of employees, Title VII also forbids retaliation against an employee for complaining of prohibited employment discrimination.  *Cifra v. GE*, 252 F.3d 205, 216 (2d Cir. 2001)

(citing 42 U.S.C. § 2000e-3(a)).  To prove retaliation, the plaintiff must present evidence demonstrating:  "(1) that she engaged in protected participation or opposition under Title VII; (2) that the employer was aware of this activity; (3) that the employer took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action."  *Id.*  Similar to the showing required for claims of discrimination, once the plaintiff has established a prima facie case, the familiar burden shifting framework controls the Courts analysis.

In *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006), the Supreme Court held that the anti-retaliation provision of Title VII, unlike its substantive provision, is not limited to discriminatory actions that affect employment terms and conditions.  *White*, 126 S. Ct. At 2412–13.  According to the Court, to prevail on a claim for retaliation under Title VII, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at  2415).  Pursuant to the Court's decision in *White*, a plaintiff need only show that his employer took an adverse action and that a reasonable employee would find the employer's action to be adverse.  The action need not affect the terms of employment.  In addition, the Supreme Court determined that "[w]hether a particular reassignment is materially

adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* at 2417. As a result, the anti-retaliation provision is broader than before and is no longer limited to discriminatory actions affecting the terms of employment. *Id.* at 2412.

Further, in order to prevail on a claim for retaliation, the employee need not establish that the conduct initially complained of amounted to an unlawful employment practice, but need only demonstrate that she had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Quinn*, 159 F.3d at 769 (quoting *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).

However, notwithstanding the law of retaliation as stated above, the plaintiff's claims pursuant to the First Amendment cannot stand. The plaintiff claims that after she wrote a memo to Zuaro regarding evidence of misfiling, uncashed checks, and other clerical problems in the Unit, she was disciplined, transferred, and demoted. However, the plaintiff's First Amendment claims are barred by the Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006). To succeed on a First Amendment retaliation claim, the plaintiff must show: (1) that she engaged in constitutionally protected speech because she spoke as a citizen on a matter of public concern; (2) she suffered an adverse employment action;

and (3) the speech was a motivating factor in the adverse employment decision. *Ruotolo v. City of New York*, -- F. 3d --, No. 06CV3886, 2008 WL 313795, at *3 (2d Cir. Feb. 6, 2008) (quoting *Skehan v. Vill. of Mamroneck*, 465 F.3d 96, 106 (2d Cir. 2006).

In *Garcetti,* the Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti,* 126 S. Ct. at 1960. Here, the plaintiff was the Supervisor of Human Resources at the time she submitted her report to Zuaro outlining the administrative problems that she uncovered in the Unit. Thus, Anderson's statements were made as part of her official duties, not as a citizen, and her claim pursuant to the First Amendment will be dismissed.

The plaintiff also alleges that she was denied a promotion, disciplined, transferred, and faced unfair standards in attempting to receive medical disability leave in retaliation for her complaints of harassment and discrimination. The plaintiff states that she complained to supervisors following her observations that Dudek requested additional medical examinations for female officers who sustained work related injuries and her viewing of sexually explicit materials on the computer in Dudek's officer. Further, the plaintiff states that she twice complained to Dudek about Maguire's sexually explicit remarks in 2002, and in September of 2003 she

complained to Sheriff Reilly regarding the dearth in female promotions.

The Court finds that the plaintiff's complaints regarding harassment and discrimination constituted a protected activity of which her employer was aware. *See Raniola*, 243 F.3d at 623 (finding that internal police complaints qualify as protected activities), *Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992) ("Congress sought to protect a wide range of activity in addition to the filing of a formal complaint." (internal quotations and citations omitted)). Further, the disciplinary proceedings, transfer, and denial of promotion in rank that Anderson encountered satisfy the adverse employment action standard. *See Mormol v. Costo Wholesale Corp.*, 364 F.3d 54, 57 (2d Cir. 2004) ("A tangible employment action . . . constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." (internal quotations and citations omitted)).

The plaintiff must also show that a causal nexus exists between her protected activity and the adverse employment action. *Sackey*, 2006 WL 337355 at *10. However, retaliatory motive need not be the sole cause of the adverse employment action, but retaliation must be a "substantial or motivating factor" behind the adverse action. *Raniola*, 243 F.3d at 625 (internal quotations and citations omitted).

Viewing the evidence in a light most favorable to Anderson, the Court finds that there is an issue of fact with regard to whether the department's refusal to promote

the plaintiff and the disciplinary actions taken against her were motivated by retaliatory animus. The plaintiff was first informed of the investigation against her on September 30, 2003, shortly after she complained once again to Sheriff Reilly about the Department's failure to promote her. *See Quinn*, at 159 F.3d at 769 (finding that causal connection can be established by indirect evidence where the protected activity was followed closely in time by an adverse action). Furthermore, throughout this period, Maguire and Dudek, the same persons that the plaintiff accused of inappropriate conduct were responsible for at least some of the employment decisions that adversely affected her. *Id.* at 770 (finding sufficient nexus where nearly all of the evidence supporting the employer's non-retaliatory reasons for the plaintiff's discharge was generated by the alleged harassers.)

The defendants contend that there were legitimate reasons for all of the disciplinary actions taken against the plaintiff and for the denial of her promotion. The defendants argue that the plaintiff was disciplined following an investigation of a complaint that she improperly received shift differential payments. Further, the defendant's claim that the plaintiff was disciplined for improperly accessing employee documents after she was informed about the investigation pending against her. The plaintiff counters that the defendants' reasons are pretextual because male officers were not similarly disciplined for receiving shift differential and that she accessed the personnel records at the direction of her supervisor. Given the apparent nexus

between the plaintiff's complaints to her supervisors about harassment and the disparate treatment of female officers, and the retaliatory actions taken against her, summary judgment on Anderson's retaliation claims is inappropriate.

### E. As to Plaintiff's Claims Pursuant to the New York State Human Rights Law

The defendants contend that the plaintiff's New York State Human Rights Law claims are barred by her failure to comply with the notice of claim requirements of New York General Municipal Law §§ 50-e and 50-i and New York County Law § 52(1). Because the language of the General Municipal Law is limited to tort claims, courts have held that the notice of claim provision of the General Municipal Law does not apply in cases of employment discrimination brought pursuant to New York Exec. Law § 290, *et seq. Hamm v. Hevesi*, No. 95CV6367, 1998 WL 92395, at *6 (S.D.N.Y. March 4, 1998); *Dimonda v. New York City Police Dep't*, No. 94CV0840, 1996 WL 194325, at *6 (S.D.N.Y. April 22, 1996). However, N.Y. County Law § 52(1) has broader application than General Municipal Law § 50-e and requires a notice of claim for claims "against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature . . . *and any other claim for damages arising at law or in equity*." N.Y. County Law § 52 (emphasis added); *see also Feldman v. Nassau County*, 349 F. Supp. 2d 528, 539 (E.D.N.Y. 2004); *Keating v. Gaffney*, 182 F. Supp. 2d 278, 291 (E.D.N.Y. 2001). Therefore, the notice of claim requirements apply to the plaintiff's claims against Nassau County and

the individual defendants acting in their official capacities.

Under New York General Municipal Law § 50(e)(1)(a) and New York County Law § 52(1), a plaintiff must file a notice of claim against a county or its employees within ninety days after such claim arises. N.Y. County Law § 52 (citing N.Y. Gen. Mun. Law § 50(e)). In addition, the plaintiff's complaint must allege that the notice of claim was served, and at least thirty days has elapsed since the notice was served during which time the defendant has neglected to or refused to satisfy the claim. *See Drees v. County of Suffolk*, No. 06CV3298, 2007 WL 1875623, at *13 (E.D.N.Y. June 27, 2007) (citing *Henneberger v. County of Nassau*, 465 F. Supp. 2d 176, 198 (E.D.N.Y. 2006)). The plaintiff has satisfied these requirements.

Anderson filed her notice of claim on February 20, 2004, less than ninety after February 2, 2004, the date on which she received notification that her medical leave had been reclassified as extended leave and the last act she alleges to further her discrimination and retaliation claims. Further, the plaintiff filed her amended complaint on August 2, 2004, more than thirty days after her notice of claim. *See Stewart v. Village of Spring Valley*, 55 F. Supp. 2d 294, 295 (S.D.N.Y. 1999) (finding the notice of claim requirement satisfied where the plaintiff's amended complaint was filed more than thirty days after service of the notice of claim). Thus, the Court finds that the notice of claim requirements have been satisfied.

Moreover, as the plaintiff's New York State claims are analyzed according to

the same standards as her Title VII claims, the Courts analysis regarding the merits of plaintiff's claims that she endured a hostile work environment, failure to promote, and retaliation apply with equal effect to her New York State Human Rights Law claims.

**F.      As to the Individual Defendants**

Finally, the individual defendants Dudek, Maguire, and Reilly contend that the plaintiff cannot assert Title VII claims against them and that the remainder of her claims cannot withstand summary judgment because she has adduced insufficient evidence to establish a prima facie case against them.  The Court notes that the plaintiff's complaint alleges only § 1983 and state law claims against the individual defendants. Therefore, the individual defendants' arguments regarding Title VII need not be addressed.

With respect to the merits of the plaintiff's claims against the individual defendants, at all relevant times these three individuals are alleged to have either actively participated in the events giving rise to the plaintiff's complaint or served in supervisory roles within the Department with full knowledge of the discriminatory actions.  Accordingly, the Court finds that plaintiff's allegations against the individual defendants are sufficient to withstand summary judgment.

### III.    CONCLUSION

For the foregoing reasons it is hereby,

**ORDERED**, that the defendants' motion for summary judgment on the plaintiff's hostile work environment claims is denied; and it is further

**ORDERED**, that the defendants' motion for summary judgment on the plaintiff's failure to promote claims is denied; and it is further

**ORDERED**, that the defendants' motion for summary judgment on the plaintiff's retaliation claims is granted with respect to her claims pursuant to the First Amendment and denied in all other respects; and it is further

**ORDERED**, that the defendants' motion for summary judgment on the plaintiff's claims pursuant to New York State Executive Law § 290 *et seq.* is denied; and it is further

**ORDERED**, that the individual defendants' motion for summary judgment is denied; and it is further

**ORDERED**, that the parties are directed to appear before the Court on March 26, 2008 at 9:00am for a pre-trial conference in Court Room 1020.  Counsel shall have authority to discuss settlement at this conference.

**SO ORDERED.**

Dated: Central Islip, New York
        March 18, 2008

                                        _____/s/Arthur D. Spatt_____
                                        ARTHUR D. SPATT
                                        United States District Judge